**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X

PHILLIP SULLIVAN, JR.,
*on behalf of himself and all others similarly situated*,

                               Case No.:

               Plaintiff,             *Filed Electronically*

     v.

STARBUCKS COFFEE COMPANY,

               Defendant.

--------------------------------------------------------------------X

## CLASS ACTION COMPLAINT

       COMES NOW, PHILLIP SULLIVAN, JR., (hereinafter "Plaintiff") on behalf of himself and all others similarly situated, and alleges as follows:

## INTRODUCTION

       1.     Plaintiff brings this action individually and on behalf of all others similarly situated against STARBUCKS COFFEE COMPANY (hereinafter "Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations in connection with accessibility barriers at all Starbucks coffee shops throughout the United States ("Defendant's Facilities") except for Defendant's sole accessible coffee shop, which is located in Washington, D.C. (the "Accessible Store").[1]

---

[1] https://www.washingtonpost.com/business/2018/10/23/starbucks-opens-first-us-sign-language-store-with-murals-tech-pads-fingerspelling/?utm_term=.254af726bb49 (last accessed December 27, 2018).

2.      Plaintiff has a hearing disability and is limited in the major life activity of hearing, which has caused him to be dependent upon written information for understanding verbal announcements. Plaintiff is deaf in both ears.

3.      Plaintiff has patronized Defendant's Facilities in the past, and intends to continue to patronize Defendant's Facilities. However, unless Defendant is required to remove the access barriers described below, Plaintiff will continue to be denied full access to Defendant's Facilities as described, will be deterred from fully using Defendant's Facilities, and will be unable to effectively communicate in Defendant's Facilities.

4.      Plaintiff needs to communicate effectively in order to place an order and pick up his order, and Defendant's access barriers prevent him from doing so.

5.      Technological advances have made the removal of these access barriers readily achievable[2] and not unduly burdensome.[3] For a company of Defendant's size, removal of these barriers is almost trivial.[4] The present ease with which Defendant could remove the access barriers obligates it to do so. "The obligation to engage in readily achievable barrier removal is [a] continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances." 56 FR 7452, 7468.

6.      Therefore, on behalf of a class of similarly situated individuals, Plaintiff seeks an injunction requiring Defendant to remove all access barriers so that Defendant's Facilities are fully accessible to, and independently usable by, individuals with hearing disabilities, as required

---

[2] 28 CFR 36.304.

[3] 28 CFR 36.303.

[4] "In determining whether a particular action is readily achievable or an undue burden, one must evaluate the degree to which the parent entity has resources that may be allocated to the local facility." 56 FR 7452, 7469.

by the ADA. Plaintiff further requests that, given Defendant's historical failure to comply with

the ADA's mandate, over a period of many years, the Court retain jurisdiction of this matter for a

period to be determined to ensure that Defendant comes into compliance with the relevant

requirements of the ADA and to ensure that Defendant has adopted and is following an

institutional policy that will, in fact, cause Defendant to remain in compliance with the law. The

Court's oversight over the removal of Defendant's access barriers would not be complex because

Defendant has already implemented the necessary steps in the Accessible Store in Washington,

D.C., making that store accessible to the hearing impaired.[5] Defendant only needs to take the

technology it already uses and implement it universally, throughout all of Defendant's Facilities.

### DEFENDANT'S STORES ALMOST ALL HAVE BARRIERS TO ACCESS AND LACK BASIC TECHNOLOGY AND TRAINING THAT WOULD MAKE THEM ACCESSIBLE

7.    Defendant is capable of deploying accessible technology and has already

"developed tools to elevate and enhance service to deaf customers."[6] However, other than at the

Accessible Store, Defendant does not use the technology that it has developed to make

Defendant's Facilities accessible. The Accessible Store uses relatively cheap, commonly

available technology to remove the barriers that otherwise make Defendant's Facilities

inaccessible to hearing-impaired people.

---

[5] https://www.washingtonpost.com/business/2018/10/23/starbucks-opens-first-us-sign-language-store-with-murals-tech-pads-fingerspelling/?utm_term=.254af726bb49 (last accessed December 27, 2018).

[6] https://news.starbucks.com/views/Starbucks-Commitment-to-Access-and-Disability-Inclusion (last accessed December 27, 2018).

8.      Marthalee Galeota, senior manager for accessibility at Starbucks, stated that due to the accommodations in the Accessible Store **"[a]ll the barriers are gone from being able to communicate, or from people being able to demonstrate their skills and show off the talent they have."**[7] Plaintiff seeks to remove all barriers to the hearing impaired from Defendant's other stores.

9.      Defendant chose to install accommodations in the Accessible Store because that location is near Gallaudet University, the world's only university for deaf and hard-of-hearing students. As explained below, Defendant has the legal obligation to make all of its stores accessible.

10.     At the Accessible Store, technology and training allow deaf and hard-of-hearing customers to order despite their disabilities.[8] The technology at the Accessible Store also allows hearing impaired individuals to work at such store locations. Communication between employees and customers can be conducted via an electronic pad:

---

[7] https://news.starbucks.com/news/all-signs-point-to-washington-dc (last accessed December 27, 2018).

[8] All employees at this store happen to be fluent in American Sign Language, but the technology used there could be used elsewhere without any need for fluency in sign language.









11.     The Accessible Store also has a two-way keyboard system for communication:



12.     Defendant does not deploy this system widely, even though it has been

considering mass-installation of these devices since 2007.[9]

---

[9] Seth Sutel, Associated Press, *New Devices Open Communications for Deaf*, The Washington Post (Nov. 7, 2007), available at http://www.washingtonpost.com/wp-dyn/content/article/2007/11/07/AR2007110700376_pf.html.

13.     Customers at the Accessible Store see the details of their order on an order screen, so they can ensure that their order was taken correctly:





14.     Once customers at the Accessible Store have completed their order and confirmed its contents on the order screen, they may see when their orders are ready on the hearing-impaired accessible information screen:







15.     All of this accessibility technology was absent in the Facility where Defendant

mangled Plaintiff's drink order, as described below. But this technology is easily implemented—

and *has* already been implemented—by Defendant. Defendant should remove its access barriers

by implementing order pads, two-way keyboards, order screens, and information screens in each

of Defendant's Facilities and by training all employees nationwide in the use of this technology.

## **DEFENDANT'S ACCOMMODATIONS ARE INADEQUATE**

16.     Defendant advertises that its mobile app is its method of accommodating the

disabilities of deaf and hard-of-hearing customers. Its website relates the vignette of a

"26-year-old who is deaf" and who "struggled to communicate a food and beverage order with

baristas in a busy Starbucks during the morning rush hour" until she used Defendant's mobile

app, which is described as "a timesaver, and a way for her to get exactly what she wants.[10] For hearing-impaired people such as Plaintiff, the mobile app does not give an accurate order of "exactly" what they want, and they experience inferior service.

17.     Even if the mobile app reliably allowed hearing-impaired individuals to order and receive the drinks that they paid for, Defendant's requirement that hearing-impaired people order via mobile app discriminates against them because other patrons are able to order in person. Requiring hearing-impaired people to order exclusively by the mobile app requires hearing-impaired individuals to own and possess a modern mobile computing device as a condition of service. In practice, hearing-impaired people are required to order via mobile app, but actually receive inferior service compared to other patrons.

18.     Defendant's affiliates also relegate deaf and hard-of-hearing customers to ordering only with the mobile app:

---

[10] https://news.starbucks.com/news/digital-accessibility-in-starbucks-stores (last accessed December 27, 2018).



**Starbucks Partners - Access Alliance**

**Lisa Budinich** ▸ **Starbucks Partners - Access Alliance**
August 2 · 🌐

I've been a Starbucks customer for many years now. While I've had good service, I've noticed that more and more baristas are in a hurry when taking orders. It's been difficult for me to communicate with some of them when they keep looking away to other baristas to get clarification in my order. Plus, the baristas at the Starbucks I go to often know that I'm deaf. Some of them are patient with me, others are not. Those that aren't will try to talk with whoever I'm with instead of with me or they will talk so fast I can't catch what they're saying or if I try to sign with them, they get mad and slam a paper and pen down in front of me. How do I remedy this? I really like Starbucks and would like to continue buying coffee there.

1 Comment

👍 Like          💬 Comment          ↪ Share

Oldest ▾

**Starbucks Partners - Access Alliance** ✓ Hi Lisa,

We are so sorry to read that this is your experience at our stores. What we recommend you try is ordering your items through our Mobile Order & Pay feature on our Starbucks app. You can place your order straight from your phone and skip the line. The barista will put out your items at the handoff bar when it is ready with your name displayed on the sticker. For more information, you can ready more about this feature here:
https://news.starbucks.com/.../starbucks-mobile-order-pay....

If these issues persist, you can always reach out to our customer service team and we can support your concern with the local field leaders of your stores to address more specific behaviors.

NEWS.STARBUCKS.COM
**Starbucks Mobile Order & Pay Now Available...**          Save

Like · Reply · 12w

Write a comment...

Press Enter to post.

## DEFENDANT COULD EASILY USE VIDEO REMOTE INTERPRETING TO COMMUNICATE WITH DEAF AND HARD-OF-HEARING CUSTOMERS

19.     Aside from the technology that it has already successfully implemented to provide accessibility to disabled *customers*, Defendant uses other contemporary technology to accommodate the hearing disabilities of its *employees*. Defendant uses Video Remote Interpreting services to communicate with its deaf employees.[11] "Video remote interpreting (VRI) service means an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images as provided in [28 CFR] 36.303(f)." 28 CFR 36.104. Defendant could use technologies such as VRI to provide effective communication to deaf customers, just as it already uses VRI to provide such communications with its employees.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

20.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

21.     The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

22.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. §§ 12181-89.

---

[11] https://news.starbucks.com/views/starbucks-on-inclusion-of-deaf-community (last accessed December 27, 2018).

23.     Defendant owns, operates, controls and/or leases places of public accommodation.

24.     Defendant's Facilities are not fully accessible to and independently usable by individuals with hearing disabilities.

25.     Defendant does not provide the tools or training necessary to allow for the "effective communication" mandated by the ADA. 56 FR 7452, 7466.

26.     Because the communications at Defendant's Facilities directly implicate the medical history of people with disabilities, Defendant must provide more than written notepads for communication. As stated by the Department of Justice, in complex matters such as "communication of medical history or diagnoses," an interpreter should be used. 28 CFR Part 36, Appendix A at Section 36.303, Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities (September 15, 2010), Americans with Disabilities Act Accessibility Guidelines. The regulations explicitly state that "guidance on this issue can be found in a number of agreements entered into with health care providers and hospitals that are available on the Department's Web site at http://www.ada.gov." The referenced agreements state that only "qualified" note takers who are trained "to take notes effectively and accurately, using any necessary specialized vocabulary and terminology," constitute "Appropriate Auxiliary Aids and Services." Written notes between consumers and untrained employees are only acceptable if specifically requested by the consumer. See Exhibit A to Settlement Agreement Between the United States and Norwegian American Hospital Under the Americans With Disabilities Act;[12] Exhibit A to Settlement Agreement Between the United States and Methodist Healthcare Under

---

[12] https://www.ada.gov/norwegian.htm (last accessed December 27, 2018).

the Americans With Disabilities Act;[13] and Exhibit 1 to Settlement Agreement Between the

United States of America and Greater Southeast Community Hospital, Washington, D.C. D.J.

No. 202-16-123.[14]

27.     A customer's allergies are a type of medical history that an establishment serving

food or drink must not misinterpret.

28.     While Defendant has centralized management policies regarding the design,

construction, operation, and maintenance of its Facilities, those policies are inadequate, and

Defendant's Facilities continue to be inaccessible to, and not independently usable by,

individuals with hearing disabilities. With respect to its individual locations, Defendant owns and

operates each location.

## JURISDICTION AND VENUE

29.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42

U.S.C. § 12188.

30.     Plaintiff claims asserted herein arose in this judicial district and Defendant does

substantial business in this judicial district.

31.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is

the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

32.     Plaintiff is and, at all times relevant hereto, was a resident of the State of New

York. As described above, as a result of his deafness, Plaintiff relies upon written information in

---

[13] https://www.ada.gov/methhosp.html (last accessed December 27, 2018).

[14] https://www.ada.gov/secommhosp.htm (last accessed December 27, 2018).

order to understand verbal announcements. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA as set forth at 28 CFR § 36.101 *et seq.*

33.     Defendant is a Washington corporation with its headquarters at 2401 Utah Avenue South, Suite 800, Seattle, Washington 98134.

34.     Defendant's Facilities are each a public accommodation pursuant to 42 U.S.C. § 12181(7).

## VIOLATIONS AT ISSUE

35.     Plaintiff frequents Defendant's Facilities in the New York City area, including Defendant's café location at 1841 Broadway, New York, New York 10023 ("Subject Property"). Plaintiff regularly has problems with drinks he orders from Defendant because they are often not exactly what he ordered. This problem is identical across all of Defendant's Facilities that he has visited.

36.     At Defendant's Facilities, Plaintiff experiences unnecessary difficulty due to Defendant's failure to provide written alternatives for verbal announcements.

37.     On or about 7:44 a.m. on July 23, 2018, Plaintiff ordered a Venti Starbucks Doubleshot® on Ice with coconut milk from the Starbucks App. Plaintiff used Defendant's mobile app, which it represents as the method by which deaf and hearing-impaired people can order drinks,[15] because Defendant does not provide a fully accessible method by which he could order. Plaintiff knew that Defendant regularly makes errors in preparing drinks ordered via mobile app at a rate exceeding its error rate when preparing conventionally ordered drinks, but

---

[15] *See infra*, at ¶¶ 18–19.

this was nonetheless the method of ordering available to him that had the lowest chance of error or confusion.

38.    Upon ordering, Plaintiff went to the counter area where drinks can be picked up and watched Defendant's employees make drinks. Plaintiff regarded it as possible that Defendant's employee might carelessly follow the default recipe rather than his explicit order. Even though Plaintiff had specifically ordered his drink with coconut milk instead of dairy milk, Plaintiff watched to ensure that his drink was not made according to the default recipe because Defendant frequently puts the wrong ingredients in drinks ordered on the mobile app.

39.    Plaintiff knew that the default recipe for his drink used 2% fat dairy milk and that Defendant keeps this ingredient in blue containers. He watched to ensure that Defendant's employee did not pour from a blue container into his drink.

40.    While preparing drinks, the employees sometimes spoke aloud, but due to his disability Plaintiff could not determine who they were speaking to or what was said. Plaintiff saw an employee speak aloud and then complete his drink by pouring liquid from a purple carton into it. Plaintiff began consuming his drink immediately and finished it within two hours.

41.    Plaintiff had opted for coconut milk in his drink because he is lactose intolerant and cannot digest lactose in dairy milk.

42.    Several hours later, Plaintiff had an upset stomach, including nausea and diarrhea Plaintiff later learned that Defendant stores 0% fat dairy milk in a purple container. Plaintiff remembers that Defendant's employee had prepared his drink by pouring white liquid from a purple container into it. Defendant had thereby replaced the coconut milk that Plaintiff had ordered with skim milk, but Plaintiff did not discover that his drink had been made differently

17

than he had ordered until after getting sick and learning that Defendant uses a purple container for 0% fat dairy milk and a green container for coconut milk.

43.     Plaintiff believes that the employee must have asked Plaintiff whether dairy milk would be an acceptable substitute for coconut milk in his drink, but the employee did not communicate in a manner that Plaintiff could have understood. The employee likely knew Plaintiff by name, sight, and drink because Plaintiff regularly frequents this Starbucks location and generally gets the same drink or similar drinks under his name, and so the employee knew to ask Plaintiff about substituting a different ingredient for coconut milk. However, due to his disability, Plaintiff did not know that the employee was asking him about substitutes for coconut milk.

44.     Due to his disability, Plaintiff was denied the exact drink that he had paid for. It is important to Plaintiff that he be able to communicate and order beverages just like anyone else, even though he is deaf, and the ADA exists to ensure that barriers preventing him from communicating his drink order are removed.

45.     Because he was unable to hear the employee's question or announcement, and because Defendant provided no written alternative to that announcement, Defendant's employee changed Plaintiff's order without Plaintiff's knowledge or consent. This difficulty would not have happened to an aurally capable person, who would have been able to choose another substitute for the coconut milk, such as almond milk, or **at least** would have known not to drink the dairy beverage that Defendant provided. Plaintiff should have been involved in the medically important decision of what would enter his body. Defendant failed to provide him with effective communication and effectively tricked him into consuming food that his body could not physically tolerate.

46.     In addition to the basic ability to receive the exact drink that he ordered, it is vital that Plaintiff be able to avoid dairy milk because he is lactose intolerant. Plaintiff prefers coconut or almond milk to dairy milk because dairy products give Plaintiff an upset stomach, including nausea and diarrhea. Plaintiff was denied the opportunity to avoid food that he cannot eat for medical reasons.

47.     Plaintiff is health-conscious and also favors non-dairy milk for its health benefits.

48.     As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and use Defendant's Facilities has been significantly impeded.

49.     Defendant must anticipate encountering customers with hearing impairment in all of its stores. Defendant should implement nationwide the order pads, two-way keyboards, order screens, and information screens used to make its Accessible Location accessible, and Defendant should train its employees in the use of these devices.[16]

50.     Defendant's Subject Property is located in close proximity to several hearing aids services, such as Audio Help Hearing Centers, Hi Tech Hearing Center and Hear USA, and Defendant should particularly expect deaf patrons at the Subject Property because its location is near these hearing aids services. Despite the numerous deaf patrons, Defendant has in place no policies or training to instruct employees about the special needs of such customers. Defendant's employees are not capable of dealing effectively with deaf patrons. The ADA requires that Defendant make all of its locations accessible.

---

[16] This technology is simple to use. Defendant can make all of its stores accessible with simple technology and training, even without having cashiers that can communicate in American Sign Language.

51.     Though Defendant has centralized policies regarding the management and operation of its Facilities, Defendant has never had an effective nationwide policy that is reasonably calculated to make its Facilities fully accessible to, and independently usable by individuals with hearing disabilities. Instead, Defendant's lack of concern for the deaf and hard-of-hearing is notorious. *See Bitkower v Starbucks*, 1:13-cv-04777 (S.D.N.Y), Dkt. No. 19, in which Defendant was sued for refusing to serve people coffee because they are Deaf, making fun of the way Deaf customers sound, attempting to eject Deaf customers from its stores, and making false allegations against Deaf customers to the police.

52.     As an individual with a hearing disability who is dependent upon written replacements for oral announcements, Plaintiff has a keen interest in whether public accommodations have barriers that impede full accessibility to those accommodations by individuals with hearing impairments.

53.     Plaintiff demands that Defendant implement order pads, two-way keyboards, order screens, and information screens in its Facilities to display written messages whenever Defendant's employees must communicate with a hearing-impaired customer. The physical technology needed to make Defendant's Facilities accessible to deaf customers is readily available and achievable.

54.     Plaintiff intends to continue to visit the Subject Property.

55.     Furthermore, Plaintiff intends to return to Defendant's Facilities to ascertain whether those Facilities remain in violation of the ADA. However, so long as the numerous barriers at Defendant's Facilities continue to exist, Plaintiff will be deterred from returning to Defendant's Facilities.

56.     Without injunctive relief, Plaintiff will continue to be unable to fully access Defendant's Facilities in violation of his rights under the ADA.

## CLASS ALLEGATIONS

57.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all people with hearing disabilities who have attempted, or will attempt, to access Defendant's Facilities.

58.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

59.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and the members of the class are based on the same legal theories and arise from the same unlawful conduct.

60.     Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's Facilities and/or services due to Defendant's failure to make its Facilities fully accessible and independently usable as above described.

61.     Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class. Plaintiff has retained counsel who

are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

62.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## FIRST CAUSE OF ACTION

*(Violation of 42 U.S.C. § 12181, et seq. — Title III of the Americans with Disabilities Act)*
*(on behalf of Plaintiff and the Class)*

63.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

64.     Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

65.     The Facilities are sales establishments and public accommodations within the definition of 42 U.S.C. § 12181(7)(B).

66.     Defendant is subject to Title III of the ADA because it is a place of public accommodation.

67.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

68.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

69.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

70.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

71.     Incorporating the basic components to make Defendant's Facilities accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

72.     The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of Defendant who are deaf or hearing-impaired have been denied full and equal access to Defendant's Facilities, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

73.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

74.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Facilities in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and/or its implementing regulations.

75.     Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed Class and Subclass will continue to suffer irreparable harm.

76.     The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

77.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

78.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

*(Violation of New York State Human Rights Law, N.Y. Exec. Law,*
*Article 15 (Executive Law § 292 et seq.)*
*(on behalf of Plaintiff and New York subclass)*

79.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

*80.*     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

81.      The Facilities are sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9).

82.     Defendant is subject to New York Human Rights Law because it owns and operates the Facilities. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

83.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to Defendant's Facilities, causing Defendant's Facilities and the services integrated with Defendant's Facilities to be completely inaccessible to deaf and hearing-impaired patrons. This inaccessibility denies such patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

84.     Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can

demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

85.    In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

86.    Incorporating the basic components to make Defendant's Facilities accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

87.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exc. Law § 296(2) in that Defendant has:

(a)    constructed and maintained Facilities that are inaccessible to deaf class members with knowledge of the discrimination; and/or

(b)    constructed and maintained Facilities that are sufficiently intuitive and/or obvious that is inaccessible to deaf class members; and/or

(c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to deaf class members.

88.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

89.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Facilities under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

90.     The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

91.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

92.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

93.     Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## **THIRD CAUSE OF ACTION**

*(Violation of New York State Civil Rights Law, NY CLS Civ R,*
*Article 4 (CLS Civ R § 40 et seq.)*
*(on behalf of Plaintiff and New York subclass)*

94.     Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

95.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

*96.*   N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

97.   N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

98.   The Facilities located in New York State are sales establishments and public accommodations within the definition of N.Y. Civil Rights Law § 40-c(2).

99.   Defendant is subject to New York Civil Rights Law because it owns and operates the Facilities. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

100.   Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to Defendant's Facilities, causing Defendant's Facilities and the services integrated with Defendant's Facilities to be completely inaccessible to deaf and hearing-impaired patrons. This inaccessibility denies deaf and hearing-impaired patrons full and equal access to the goods and services that Defendant makes available to the non-disabled public.

101.    Incorporating the basic components to make Defendant's Facilities accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

102.    In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

103.    Specifically, under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . . ."

104.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

105.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

106.    Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

## FOURTH CAUSE OF ACTION

*(Violation of New York City Human Rights Law,*
*N.Y.C. Administrative Code § 8-102, et seq.)*
*(on behalf of Plaintiff and New York subclass)*

107.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

108.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [b]ecause of any person's . . . disability . . . directly or indirectly . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

109.    Each of Defendant's Facilities is a sales establishment and a "place or provider of public accommodation" within the definition of N.Y.C. Administrative Code § 8-102.

110.    Defendant is subject to City Law because it owns and operates the Facilities. Defendant is a "person" within the meaning of N.Y.C. Administrative Code § 8-102.

111.    Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the Facilities, causing the Facilities and the services integrated with the Facilities to be completely inaccessible to the deaf. This inaccessibility denies deaf patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability

to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

112.   Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

> (a) constructed and maintained Facilities that are inaccessible to deaf class members with knowledge of the discrimination; and/or

> (b) constructed and maintained Facilities that are sufficiently intuitive and/or obvious that is inaccessible to deaf class members; and/or

> (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to deaf class members.

113.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

114.   As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Facilities under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the subclass will continue to suffer irreparable harm.

115.   The actions of Defendant were and are in violation of City Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

116.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(a)(8) and § 8-126(a) for each offense.

117.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

118.     Pursuant to N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

*(Declaratory Relief)*
*(on behalf of Plaintiff and the Class)*

119.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

120.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Facilities contain access barriers denying deaf customers the full and equal access to the goods, services, and facilities of the Facilities, which Defendant owns, operates, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq*., N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the deaf.

121.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

122.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

123.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Facilities are readily accessible to and usable by deaf individuals;

124.     A declaration that Defendant owns, maintains, and/or operates the Facilities in a manner which discriminates against the deaf and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

125.     An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

126.     Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed subclass for violations of their civil rights under New York State Human Rights Law and City Law;

127.     Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

128.     For pre- and post-judgment interest to the extent permitted by law; and

129.     Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: January 3, 2019

<div style="margin-left:50%">

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181


By: */s/ C.K. Lee*_____
       C.K. Lee, Esq.

</div>